UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES DONELSON, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 8078 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| Q. TANNER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Charles Donelson, an Illinois prisoner housed at the Stateville Correctional Center, is a prolific *pro se* litigant. On July 22, 2016, this District's Executive Committee determined that, due to his litigation conduct and history, "reasonable and necessary restraints must be imposed upon [Donelson's] ability to file new civil cases in this District pro se." *In re Donelson*, No. 16 C 7410 (N.D. Ill.), Dkt. 1. The Committee accordingly enjoined Donelson from filing new civil actions without first obtaining its leave. *Ibid*.

On November 9, 2017, the Committee allowed Donelson to file this lawsuit, which alleges that several correctional officials were deliberately indifferent to conditions that purportedly posed a risk to his health or safety. Docs. 1, 6. In reviewing his complaint and litigation history, the court discovered two things: (1) despite having received substantial income, Donelson has not yet paid the filing fees he owes in this District; and (2) he has been troublingly inconsistent about his financial status and litigation history, having omitted material information in his submissions to the court. The court thus ordered Donelson to show cause why his *in forma pauperis* application should not be denied, and why this case should not be dismissed, for his failure to disclose his

1

complete and accurate litigation history and/or for his nonpayment of filing fees in this District. Doc. 10. In response, Donelson filed a "motion to show cause" addressing his litigation history and a renewed *in forma pauperis* application. Docs. 13, 14.

## I. Filing Fees and Financial Status

The Prison Litigation Reform Act ("PLRA") requires all prisoners bringing civil cases or appeals in federal court to pay the full filing fee. *See* 28 U.S.C. § 1915(b)(1). If the prisoner is not able to pre-pay the fee, he may submit an affidavit including a statement of his assets, *id*. § 1915(a)(1), and seek leave to pay the fee over time, *id*. § 1915(b)(1), (2). Despite his not insubstantial income, at the time he filed this lawsuit Donelson owed over $1,500 in court fees in this District. Moreover, Donelson's original application for leave to proceed *in forma pauperis*, Doc. 3, contained serious inaccuracies.

Since 2008, Donelson has accumulated at least a dozen civil and appellate filing fees for cases and appeals he initiated in the Central, Northern, and Southern Districts of Illinois and the Seventh Circuit. Doc. 10 at 2-3; Doc. 14 at 9-12. At the time he filed this suit, he had accumulated fees totaling $1,555.00 (not including this case) in this District alone (including an appeal from the Executive Committee's decision in *In re Donelson*, No. 16 C 7410 (N.D. Ill.), docketed as No. 16-3284 (7th Cir.)), but had paid only $46.56 ($22.40 in No. 09 C 6227 (N.D. Ill.), $24.16 in No. 15 C 10295 (N.D. Ill.), $0 in No. 14 C 1249 (N.D. Ill.), and $0 in No. 16-3284 (7th Cir.)). Donelson thus owed $1,508.44, not including the fee for this case. Although his non-payment would have been justified if his income level were low, Donelson had received deposits of at least $4,695 since incurring his first filing fee in this District in No. 09 C 6227 (N.D. Ill.). But Donelson spent his money elsewhere, Doc. 10 at 5; of equal if not greater concern, Donelson temporarily

2

revoked the power of attorney he had given the Illinois Department of Corrections ("IDOC") for his trust fund account based on his assertion that he gave the IDOC that power "under duress." *Ibid*. (referencing *Donelson v. Dart*, 15 C 10295 (N.D. Ill.)).

Donelson acknowledges that his financial circumstances would have allowed him to make substantial inroads towards his filing fee obligations, but blames his non-payment on IDOC personnel. He asserts, however, that on December 8, 2015, IDOC officials informed him that they were remitting payments toward filing fees only from "State Pay," which the court understands to be prison payroll, "and not from any incoming money that [he] receive[s]," such as gifts from family members or settlement proceeds. Docs. 14 at 13, 39.

Donelson says that he doubted the propriety of that approach. *Id*. at 39. And rightly so, as court orders assessing filing fees explicitly informed him that the amounts due were to be calculated based on his monthly "income," without any indication that "income" was limited to earnings from a prison job. *See In re Donelson*, No. 16 C 7410 (N.D. Ill.), Dkt. 14; *Donelson v. Dart*, No. 15 C 10295 (N.D. Ill.), Dkt. 10; *Donelson v. Hardy*, No. 14 C 1249 (N.D. Ill.), Dkt. 20; *Donelson v. Prado*, No. 09 C 6227 (N.D. Ill.), Dkt. 4; *see also Lucien v. DeTella*, 141 F.3d 773, 776 (7th Cir. 1998) ("Congress did not define the term 'income' in § 1915(b), but it used several related terms: 'income,' 'deposits,' and 'amount in the account.' These seem to be used as synonyms, which implies that 'income' means 'all deposits.'").

Despite his purported reservations as to the use of only "State Pay" to pay down his filing fees, Donelson, who routinely peppers the court with filings regarding perceived issues in his cases—in 2017 alone, he filed over thirty motions and fourteen other documents in *Donelson v. Hardy*, 14 C 1249 (N.D. Ill.)—did not bring his concerns to any court while he had income in his

3

account. Instead, Donelson spent elsewhere at least $4,500 he received between October 21, 2012 and October 25, 2016. *See Donelson v. Pfister*, No. 1:13-cv-01494-JES (C.D. Ill.), Dkts. 115, 138 (detailing deposits between October 21, 2012, and October 21, 2013); Doc. 14 at 5 (noting the $1,000 he received on October 25, 2016 to settle *Donelson v. Dart*, No. 15 C 10295 (N.D. Ill.)). When less than $50.00 remained in his account, Donelson moved in only one of his cases "to notify the courts of officials [sic] failure and delay to pay fees." *Donelson v. Dart*, 15 C 10295 (N.D. Ill.), Dkt. 49. Donelson disclaimed responsibility for his own filing fees, blaming IDOC officials and asking that they be ordered to assume responsibility for them. *Ibid*. Around the same time, Donelson filed similar motions in some cases in other Districts. *See*, *e.g.*, *Donelson v. Atchison*, No. 3:14-cv-01311-SMY-RJD (S.D. Ill.), Dkts. 305, 310; *Donelson v. Watson*, No. 3:12-cv-03086-SEM-TSH (C.D. Ill.), Dkt. 515; *see also Donelson v. Baker*, No. 17-2999 (7th Cir.) (denying related petition for writ of mandamus regarding his payment obligations).

Thus, Donelson was pursuing multiple federal cases while his accounts were flush with cash, and he either knew or should have known that his settlement proceeds and gifts were available to pay his outstanding fees. If he had questions about whether those funds should have been used to pay his court fees, he made no effort to contact the courts that imposed the fees to seek clarification while he still had funds in his account. It was Donelson's responsibility to ensure that his debts are paid, and the record makes clear that he could and should have done more to allocate his relatively substantial income to his ever-increasing fee obligations. *See Williams v. Litscher*, 2000 WL 34239347, at *1 (W.D. Wis. Dec. 1, 2000) (rejecting a prisoner's argument that it was unfair to hold him personally responsible for his filing fees when the prison failed to make installment payments on his behalf, reasoning that "prisoner litigants are to keep a watchful eye on

4

their accounts and [e]nsure that amounts owed under the [PLRA] are withdrawn on a monthly basis"). Under these circumstances, the court declines to attribute to IDOC officials Donelson's failure to pay down his filing fees or to find that they should be held responsible for fees he incurred.

Making matters worse, Donelson recently directed IDOC officials to close his trust fund account, only to withdraw this instruction, apparently because it prevented him from receiving any money. He blames IDOC officials for closing his trust fund account in an attempt to explain away the implication that he was attempting to circumvent his filing fee obligations. *See Donelson v. Dart*, No. 15 C 10295 (N.D. Ill.), Dkts. 51, 52. According to Donelson, he directed IDOC officials to "[s]hut down [his] trust account" because he "never sign[ed to give consent] except under duress." *Id.*, Dkt. 51 at 2. Despite that explicit instruction of his to IDOC officials, he now faults them for promptly acting on his revocation of their authority over his account. Doc. 14 at 40 ("I had also moved to shut down my trust fund account. I was waiting on the forms but Stateville trust fund went ahead and shut down my account without the appropriate forms."). It does not appear that any temporary account closure materially affected Donelson's payments toward his fee obligations in this District. Nonetheless, Donelson is admonished that he may not revoke trust fund officials' authority to calculate or make payments from his accounts or otherwise seek to interfere with the operation of the PLRA. *See Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 468 (S.D.N.Y. 2004) (explaining that a prisoner's "refusing to authorize prison officials to accept checks on her behalf" and "block[ing] all deposits" to her trust fund account "smack[ed] of bad faith").

All of that said, given that Donelson is subject to a filing bar in this District and will not be proceeding with this case for the reasons discussed below, the court will not impose additional sanctions on him for what appears to be his willful avoidance of his obligation to pay filing fees incurred in this District.

## II.     Donelson's Renewed Application for Leave to Proceed *In Forma Pauperis*

The court's show cause order noted that Donelson's *in forma pauperis* application was supported by a certification from a prison official that did not match the information in the attached trust fund account statement. Doc. 10 at 4. This was of particular concern because Donelson already had one lawsuit dismissed based on a fraudulent representation of poverty. *See Donelson v. Pfister*, No. 1:13-cv-01494-JES (C.D. Ill.), Dkt. 138. The court thus ordered Donelson to supplement his application with a twelve-month trust fund account statement and a Furlough/Restitution Report. Doc. 10 at 1. In his response, Donelson again blames prison officials for the inconsistency between his application and his trust fund statement. Doc. 13 at 4. Based on the present record, the court cannot identify the source of the discrepancy. Still, Donelson is advised to ensure that any future submissions not contain similar inconsistencies, and is warned that any case is subject to "dismiss[al] … at any time if the court determines that the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A).

All that said, Donelson admits that his trust fund account statement shows that his first *in forma pauperis* application falsely reported receiving $50 in gifts during the prior twelve months, Doc. 3 at 2, when in fact he had received $145. Doc. 13 at 4-5; Doc. 14 at 5-6, 37-38, 42. He attributes that error, too, to prison officials, arguing that "[t]he state budget had Stateville not issuing post money to account receipt," which "cause[d him] to miss $95." Doc. 13 at 5. While it

may be that Donelson did not receive a "receipt" for the deposits, his financial statement defeats any implication that this might have meant that he was unaware of the deposits. Doc. 14 at 5. After all, he spent the gifted funds at the commissary within days of receipt. *Ibid*. His trust fund account statement also would have provided written corroboration of that income. Thus, Donelson represented under penalty of perjury financial information that he now admits was false—even after having previously had a case dismissed for exactly that reason. Given the importance of accurate self-reporting, it is within the court's power to sanction Donelson for such misstatements. *See* 28 U.S.C. § 1915(e)(2)(A); *cf. Rivera v. Drake*, 767 F.3d 685, 687 (7th Cir. 2014) ("If perjury pays benefits when it escapes detection, but has no cost when detected, there will be far too much perjury and the accuracy of judicial decisions will be degraded.").

Due to Donelson's falsehoods regarding his financial circumstances, his *in forma pauperis* application is denied. *See Hrobowski v. Commonwealth Edison Co.*, 203 F.3d 445, 448-49 (7th Cir. 2000) (explaining that a district court has discretion under Civil Rule 11 to impose sanctions up to and including dismissal for false financial statements, even where 28 U.S.C. § 1915(e)(2) does not mandate dismissal); *see also Cruz v. Zwart*, 2014 WL 4771664, at *4 (N.D.N.Y. Sept. 24, 2014) ("The authority of a court to deny or limit a request to proceed IFP is implicit in the permissive, rather than compulsory, language of the controlling statute … . For this reason, courts are regarded as possessing discretionary authority to deny, and thus logically to revoke, IFP status to prisoners who have abused the privilege … ."); *Palmer v. Dollar Tree*, 2012 WL 4795720, at *4 (N.D. Ill. Oct. 9, 2012) ("In some instances, courts have sanctioned plaintiffs with monetary penalties, rather than dismissal with prejudice, for misrepresentations on an IFP application.") (citing cases). Donelson is therefore assessed the full $400 filing fee for this lawsuit.

7

Still, Donelson's account statements reflect that he currently cannot pay that fee in a lump sum. His renewed *in forma pauperis* application shows that, in the six months prior to initiating this lawsuit, he received $57.90 in deposits and did not carry a substantial account balance. Doc. 14 at 5-6. In those same six months, he spent almost three times that amount at the commissary, most of which represented the last of $1,000.00 in settlement proceeds he had received on October 25, 2016, less than a year before initiating this lawsuit. *Ibid*. In the four months before *that*, Donelson spent over $500 at the commissary. *Id*. at 5. Largely due to those expenditures, he had no money in his account when he filed this lawsuit. *Id*. at 6; Doc. 3 at 6. (Donelson has since been assessed a $47 fee in *Donelson v. McCluster*, No. 18 C 2597 (N.D. Ill.), Dkt. 6. Although he has received additional settlement proceeds from *Donelson v. Hardy*, No. 14 C 1249 (N.D. Ill.), $350 of that amount was paid toward the filing fee in that case, *id*., Dkt. 391, and $505 toward the fee in *In re Donelson*, No. 16-3284 (7th Cir.), Dkt. 04/18/2018. Additional funds from the settlement proceeds may have been used to pay down Donelson's debts in other cases.)

Accordingly, Donelson must pay the fee in installments; for convenience and clarity, and despite the denial of his *in forma pauperis* application, the court adopts the mechanism set forth in 28 U.S.C. § 1915(b) for those payments. The court orders Donelson to pay (and the facility having custody of him to automatically remit) to the Clerk of Court twenty percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $400 filing fee is paid in full. This obligation applies to all deposits to his account, not just job-related income. *See Lucien*, 141 F.3d at 776 (explaining that all deposits to an inmate's trust fund account, including gifts and bequests, are "income" for purposes of calculating monthly installment payments under the PLRA). All payments shall be sent to the Clerk, United States District Court,

219 S. Dearborn St., Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify Donelson's name and the case number assigned to this action. This payment obligation will follow Donelson wherever he may be transferred.

Donelson and the trust fund officers at Illinois prisons are reminded that monthly installment payments are assessed using a per-*case*, not a per-*inmate*, approach, under which an inmate pays twenty percent of his monthly income (calculated pursuant to the PLRA) for *each* case. *See Bruce v. Samuels*, 136 S. Ct. 627, 631 (2016) (holding that 28 U.S.C. § 1915(b)(2) calls for "simultaneous, not sequential, recoupment of multiple filing fees"); *accord Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997) ("A prisoner who files one suit remits 20 percent of income to his prison trust account; a suit and an appeal then must commit 40 percent, and so on. Five suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid … ."), *overruled in part on other grounds by Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000), and *Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000).

Donelson now owes more than $1,800 payable to this District, having been granted leave to proceed *in forma pauperis* in this and the following matters: *In re Donelson*, 16 C 7410 (N.D. Ill.), Dkt. 14; *Donelson v. Dart*, 15 C 10295 (N.D. Ill.), Dkt. 10; *Donelson v. Hardy*, 14 C 1249 (N.D. Ill.), Dkt. 20; *Donelson v. Prado*, 09 C 6227 (N.D. Ill.), Dkt. 4; *In re Donelson*, 16 C 7410 (N. D. Ill.), Dkt. 14 (appeals court's dismissal of Appeal 16-3284, assessing a $505.00 fee). According to the Furlough/Restitution Report that Donelson submitted, he also owes fees in at least eight cases or appeals in other Districts. Doc. 14 at 9-12. Contrary to Plaintiff's belief, Doc. 13 at 39 ("Northern District does not collect until case is over it appears."), payments should be made under the PLRA even while a lawsuit is pending.

Thus, each time Donelson's monthly balance exceeds $10, the trust account officer at his facility must deduct 20% of his account balance for *each* of the filing fees listed above that he has not yet satisfied until the filing fees for all cases and appeals are paid in full. *See* 28 U.S.C. § 1915(b)(2). Because Donelson has incurred more than five such filing fees, 100% of his income must be diverted to his filing fees. Each time he satisfies one filing fee, another case will move forward in the queue, until he has paid all of his fees. Should Donelson be granted leave to proceed *in forma pauperis* in additional cases, those cases will be subject to the same formula. Donelson is further admonished that he may not intentionally deplete assets prior to filing, *see Newlin*, 123 F.3d at 435 (noting that prisoner may not "squander" all his assets in an effort to avoid filing fees), and that he must promptly disclose in all his cases any substantial income, such as settlement payments or other deposits, that he receives.

### III. Donelson's Incomplete Disclosure of His Litigation History

It is unnecessary to decide whether Donelson's falsehood's regarding his financial condition provides a sufficient ground for dismissal, for his failure to disclose his full litigation history warrants dismissal on its own. The court's form complaint, *see* N.D. Ill. L.R. 81.1, requires prisoners to "List ALL lawsuits you … have filed in *any* state or federal court in the United States." Doc. 1 at 10 (emphasis added). It warns:

> IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE.

*Ibid*. (emphasis in original). Knowing an inmate's litigation history helps the district court: (1) manage the case and the docket, alerting the court to other pending cases filed by the inmate,

facilitating coordination across multiple cases, and indicating the inmate's familiarity with the legal system; and (2) determine whether the inmate has "struck out" under 28 U.S.C. § 1915(g). *See Hoskins v. Dart*, 633 F.3d 541, 544 (7th Cir. 2011). Donelson initial complaint disclosed 28 separate trial court cases. Doc. 1 at 10, 29-43. In its show cause order, the court noted that at least one federal case and several state cases appeared to be missing from his list. Doc. 10 at 2-4.

In response to the show cause order, Donelson filed two documents, totaling 88 pages. Docs. 13-14. Included in the filings are a new partial litigation history list, Doc. 13 at 7-27, jumbled docket sheets for cases not included in that list, *id*. at 28-41, and a liberal sprinkling of case numbers and comments about his various cases' procedural histories. A painstaking comb of the information in Donelson's responses, as well as an extensive expenditure of time and effort reviewing his filings on the federal court system's nationwide docketing system and searching multiple state court online dockets where available, reveals that Donelson has initiated at least 45 state and federal cases, not including related appeals and a federal mandamus petition. Donelson thus failed to disclose more than a third of his previous cases.

Donelson acknowledges that his original complaint contained an incomplete list, but he attempts to blame others and argues that the omissions should be overlooked because of the challenges of litigating his multitude of cases. At times, Donelson insists that he "he relied off" a report of his litigation history prepared by a court-recruited attorney in another case. Doc. 13 at 2; Doc. 14 at 31-32. At other times, he attributes his failure to update that list to the demands of his "12 or more cases going on at the same time," characterizing the failure as "inadvertent." Doc. 13 at 2-3; Doc. 14 at 32, 34, 36 (noting that his "mistakes" were "not in bad faith"). He also asserts, somewhat inconsistently, that he compiled a supplemental list of at least some of his cases that was

not sent to the court due to a copying mix-up by IDOC officials. Doc. 13 at 2; Doc. 14 at 34. Donelson makes several additional excuses, including that information about certain cases was "not available by the time of [his] copying and filing this case," Doc. 13 at 1, 3; Doc. 14 at 29, 30, even though he brought those suits before bringing this one. He explains other non-disclosures by insisting that he lacks computer access, "was under extrem[e] distress medically and mentally," and "was in discovery pre-trial and settlement finalization." Doc. 13 at 2; Doc. 14 at 32. He also contends that he has not accumulated three "strikes" under 28 U.S.C. § 1915(g). Doc. 14 at 34, 36.

Donelson has demonstrated insufficient regard for his obligation to provide truthful and accurate information. Significantly impeding the court's review, he provided *no* information about a large portion of his cases, many of which are not readily accessible to the court because they were filed in state court. Donelson left off an entire *category* of cases that he did not previously list in this case or in any prior complaint in this District: nine cases before the Illinois Court of Claims, dating back to 2009. Doc. 13 at 28-41 (three filed in 2009, one in 2013, three in 2015, and two in 2016); Doc. 19 at 4-12; *see also Donelson v. Dart*, No. 15 C 10295 (N.D. Ill.), Dkt. 1 at 4 (listing litigation history without disclosing any Illinois Court of Claims cases); *Donelson v. Hardy*, No. 14 C 1249 (N.D. Ill.), Dkt. 1 at 8-9 (same). The court even identified a state circuit court case that Donelson did not disclose even though he filed it less than a year ago: *Donelson v. Weitkamp*, 17-MR-000288 (Cir. Ct. Sangamon Cnty., Ill.) (filed March 24, 2017).

Even assuming that Donelson's account of the copying mix-up is true, he could have alleviated much of the court's burden by promptly notifying the court when he realized the information he compiled had gone missing. But while he found the time to file a motion, Doc. 7, and a "notice," Doc. 9, in this case and continued to litigate his other cases, he did not disclose the

12

alleged snafu until the court issued the show cause order, Doc. 10. Had he provided even basic information about *all* his cases (such as a case caption, a year, and/or a court system), the court's resources could have been taxed less severely and put to better use. Instead, Donelson's substantially incomplete disclosures required the court to ferret out the cases he had filed and determine the status of each one. Even with the newly discovered information, the court is unable to assess whether the claims advanced in the Illinois Court of Claims cases have any relation to this case. Moreover, Donelson's descriptions of the cases he did disclose omit critical information. For example, the court's research establishes that he has incurred at least one "strike" under § 1915(g) in *Donelson v. Walker*, No. 3:08-cv-03186-HAB-CHE (C.D. Ill), Dkt. 14, which was dismissed for failure to state a claim.

These omissions are inexcusable. A weighty sanction is warranted due to the material and extensive nature of Donelson's misrepresentations, the need to convey the seriousness of his violations, and the unavailability of monetary sanctions given Donelson's present financial status. "A court has the inherent authority to sanction a litigant for bad faith conduct during litigation." *Colida v. Panasonic Corp. of N. Am.*, 2011 WL 1743383, at *6 (N.D. Ill. May 3, 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). "This authority must be exercised with restraint and discretion, but it includes the power to dismiss a lawsuit in an appropriate case." *Ibid.* (internal citations and quotation marks omitted). Relevant here, a fraud on the court consisting of a prisoner's failure to fully and accurately disclose his litigation history may warrant dismissal. *See Hoskins*, 633 F.3d at 543-44 (affirming dismissal due to the inmate plaintiff's failure fully disclose his litigation history); *Taylor v. Chicago Police Dep't*, 2008 WL

13

2477694, at *4 (N.D. Ill. June 18, 2008) (explaining that the plaintiff's failure to identify at least five previous lawsuits justified dismissal).

Donelson's response to the show cause order demonstrates that he was aware of numerous cases he did not disclose to the court, some of which he was actively litigating when he submitted his litigation history in this case. He repeatedly disavows any "bad faith," but his (at best) inexcusably careless failure to comply with the complaint form's explicit instructions and warnings and (at worst) dishonest non-disclosures deprived the court of extensive information within his possession that was necessary to assess his substantial litigation history in a reasonably efficient manner. Donelson may not shift the burden of tracking this information to the court merely because it is voluminous. Although it is the most severe sanction available, dismissal with prejudice is the only feasible sanction here, due to Donelson's financial status and extensive fee obligations. *See Hoskins*, 633 F.3d at 544 ("Monetary sanctions are generally not as effective against a pro se plaintiff proceeding as a pauper … ."). And a dismissal without prejudice would permit refiling of the lawsuit, a toothless penalty for a plaintiff in this situation. Given Donelson's prior dismissal for untruthful allegations of poverty and his unacceptable conduct in this case, the court concludes that it must send him another strong message about the necessity of providing accurate and complete information to the court. Donelson's claims are thus dismissed with prejudice for his fraud on the court in failing to disclose more than one-third of his prior lawsuits.

If Donelson wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. 4(a)(1). Doing so renders him liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*,

150 F.3d 810, 812 (7th Cir. 1998). If Donelson seeks to proceed *in forma pauperis* on appeal, then he must file a motion to proceed *in forma pauperis* in this court that specifies the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

June 29, 2018

_____
United States District Judge